Good morning, Your Honor, and may it please the Court. My name is Lori Windham, and I represent the appellant, Seattle Pacific University. I'd like to reserve three minutes of my time for rebuttal. Seattle Pacific University brought a pre-enforcement challenge to protect its First Amendment rights. SPU has served the Seattle community for over 130 years, and it has long had religious belief and conduct standards for its employees. State law long protected those standards, but state law has changed, and Washington's Attorney General has launched an unprecedented investigation into SPU. SPU has met this Court's standard for pre-enforcement challenges to state law. But the District Court dismissed this case based upon a fundamental misunderstanding of SPU's claims. The District Court also erroneously applied younger abstention in a way that expands rather than merely follows this Court's precedent, and that expansion, if affirmed, would split with five other Circuit Courts of Appeal. SPU brought exclusively federal challenges to a state law in federal court. It brought them in the right forum and at the right time. I'd like to turn first to our pre-enforcement claims. SPU has met this Court's test for pre-enforcement standing to challenge the allegedly unconstitutional application of a state law. This Court looks at whether there's an intention to engage in a course of conduct arguably affected with a constitutional interest. SPU has alleged that it currently engages in this conduct. It has a religious belief and conduct standards for its employees. Religious hiring decisions by religious schools are affected with a constitutional interest, and so we've met that prong. The plaintiff's future conduct is also arguably prescribed. Washington State Law Against Discrimination, or the WLAD, has narrowed the religious exemption, and so non-ministerial employees of religious institutions like SPU can bring claims under the WLAD against their employers for alleged violations of the WLAD, and here the allegation or the concern is that SPU's religious beliefs and conduct requirements would be prohibited by the WLAD, and SPU would no longer be able to apply those, at least as to non-ministerial employees. So their future conduct is arguably prescribed. Third, there is a credible threat of enforcement. SPU has a policy that it intends to continue. That was sufficient in cases like California trucking v. Bonta, at City and County of San Francisco v. Trump. SPU also has faced a prior enforcement action. There was previously a state court lawsuit against SPU over the application of these religious belief and conduct standards. May I ask you about the threat of future enforcement? It's kind of an odd situation here because we have the Attorney General who sent you, sent SPU this letter in June of 2022, but the decision or potential decision to file some kind of suit would be with the department, correct, not with the Attorney General? Your Honor, the Attorney General can and has filed lawsuits in the past for allegations of the WLAD. I agree that under the state law, the department or the commission does have power to bring claims as well, but the Attorney General can also sue SPU in state court if he so desires. And so is the threat premised on the fact that they haven't walked it back or they haven't brought coverage beyond the ministerial exception? Yes, the disavowal is important as it was in cases like Italian Colors Restaurant where the failure to disavow was significant. The fact that we have an investigation that is current that has not been ended or narrowed in scope is also relevant. And the fact that the AG has sent this letter saying that he intends to review and consider enforcement of the law is also relevant. In Arizona v. Yellen, the secretary had sent a letter to the states saying that the federal government was going to enforce the policy. And there it wasn't even clear that the policy was going to be enforced in the way that Arizona feared. And yet, even so, this court found that the stated intent to enforce, even if it was in a context of a cooperative discussion going forward, was sufficient to meet this court standard. Similarly, in California Trucking v. Bonta, letters had gone out notifying employers or notifying companies of the new obligations under the changed state law that was sufficient for a threat of enforcement. And so the investigation and the letter here and the failure to disavow are all independently powerful evidence of a credible threat of enforcement consistent with this court's prior decisions. The district court, so we have satisfied all of the standards for stating pre-enforcement claims in this court. The district court incorrectly believed that it could not redress SPU's claims. We want to be very clear that we are not asking this court to change state law. We are not disagreeing with how the Washington Supreme Court interpreted the Washington Constitution. We're asking a separate question. Does the WLAD, as authoritatively interpreted and applied by the state Supreme Court, violate SPU's First Amendment rights? That is a federal question that federal courts can entertain. SPU sought declaratory and adjunctive relief that was specific to this question. Can the WLAD constitutionally be applied to SPU and its relationships with its non-ministerial employees and separately with its ministerial employees? We had those claims. The district court failed to even consider those. And that alone is reason to reverse and remand because this court has said that standing is assessed with regard to each claim and each separate form of relief that is sought. Just to be clear, in your prayer for relief, you talk about decisions regarding ministerial exceptions, but then you have some broader language. So are you seeking a declaratory judgment that the department's interpretation of limitation to ministers is a violation of the U.S. Constitution? We're not asking for something quite that broad. What we are saying is that the standard under the WLAD that now applies to employers in Washington would, in SPU's case, violate its First Amendment rights under several different categories, free exercise, freedom of association, expressive association, if it were applied to SPU's employees. That's certainly true with regard to ministers, but it's also true with regard to non-ministerial employees. And so that is what we are asking. You're essentially asking this to all employees, essentially, is what you're saying. Yes. We have said that our claim for relief has asked for a declaratory and adjunctive relief that the WLAD cannot be constitutionally applied to the religious conduct and belief standards regardless of whether or not the employee is a minister. That's a form of relief that the federal courts can grant. Separately, we have... And again, it may or may not be a separate question during discovery in terms of who is and who is not a ministerial employee, correct? Well, Your Honor, so this is, and I think this is where the district court's other error comes in. As the district court presumed, it would be necessary up front to know who is and who is not an employee. We have not asked for that. We've never asked for that. The court can issue relief. If it issued relief for all employees, as this claim for relief has asked, then it wouldn't be necessary to look at that at all. But even if the district court were to say you can't apply this with regard to non-ministerial employees, it's not necessary on the front end to go through all of the 400 employment positions to decide. Well, I'm not suggesting... I'm following up on Judge McKeown's question. My point is, I guess my question is that at this stage, in terms of the motion to dismiss, that's a matter that can await another day, perhaps, during discovery. You would agree with that? It may be that that becomes an issue during the discovery process, and it may or may not be an issue at the stage of summary judgment, but not at a motion to dismiss stage. I agree, Your Honor. It is not an issue at the motion to dismiss stage. Right. Okay. It does seem to be some blending of the redressability with the merits by the district court in trying to get to this ultimate question that Judge Bennett is talking about. So at this point, what is your best case for why the court could offer redressability here? Your Honor, there are a number of them. I would point to Italian Callers Restaurant. I'd point to California Trucking. I would point to Skyline Wesleyan Church. In all of those cases, what the court did is it looked at the state law that was challenged, allegedly in violation of the First Amendment or of other federal law, and it made a determination as to whether there was a conflict between the state law and the federal rights. In Italian Callers Restaurant, there was ultimately an injunction that protected the plaintiffs there in Skyline Wesleyan. And there was ultimately an agreed court order and an injunction that protected the plaintiffs there. And we are seeking the same kind of relief that was sought in those cases. SPU does have additional claims that are specific to the AG's investigation. Those claims are premised on the notion that it is improper for the government to entangle itself in decisions of religious institutions when they are making decisions regarding ministerial employees, and also when they are making determinations regarding religious faith and doctrine and internal management. We have pled that we have injury now, based upon those claims, that this is separate from our pre-enforcement standing claims. And we've pointed to the Supreme Court's decision in NLRB v. Catholic Bishop and the D.C. Circuit's decision in Duquesne University v. NLRB, where there was this question of can a federal agency come in and exert jurisdiction over the hiring decisions of religious institutions? Neither of those cases was specific to ministerial employees. In fact, in Duquesne University, the NLRB only wanted to exert jurisdiction over adjunct faculty outside the theology department. And even- What about Twitter v. Paxton? If, if I read your pleadings, plus your argument today really being this inquiry letter itself is part and parcel of the constitutional violation, how does that square with Twitter v. Paxton? So, Your Honor, I believe that Twitter is relevant at most to SPU's retaliation claims. That's count one and count eleven. Twitter is definitely not relevant to our pre-enforcement claims. I was distinguishing that because you had kind of moved on to these other claims. And I was looking just at the inquiry letter. Yes, Your Honor. And why I believe Twitter is different in that case is that in a retaliation case, you're looking at behavior that is perfectly acceptable and lawful, but for the unlawful retaliatory intent. When you're talking about other kinds of claims, such as the entanglement here, the conduct itself, the investigation itself is unlawful. So there are additional concerns. There are additional constitutional safeguards and guardrails that come into place. And if Your Honor looks at the Twitter decision, they specifically distinguish the obscenity cases on this theory, that there is complex law governing obscenity. And so it's necessary, I believe, that the, the quote was constitutional guardrails that needed to be in place or constitutional guidelines that were in place with regard to obscenity. And so there, where there was a chill on expression, those claims were allowed to go forward in a little bit different posture. That is at least equally true when we're talking about the religious hiring decisions of a religious institution. That is what is being chilled right now. That is what is subject to this investigation. And what we're asking for here is not that there never be any investigation ever, but there be appropriate constitutional guidelines, appropriate constitutional guardrails placed upon the conduct of that investigation. I don't know what that means because I'm reading this inquiry letter and they're asking for fairly straightforward documents. What would be the constitutional guardrails vis-a-vis the inquiry letter? We're asking the AG to proceed. We're asking the court to say that the AG must proceed in a way that is precedented in ordinary rather than unprecedented and extraordinary. Courts all the time hear cases about employees of religious institutions who assert employment discrimination claims. And there's a way that those ordinarily proceed. We've collected a number of these cases in our briefing where they proceed on the basis of an individual employee, not an institution-wide fishing expedition, and that they look first at whether the employee is a minister. If so, that's the end of the case. If not, we proceed on to the rest of the claims. But what the AG is purporting to do here and attempting to do here is look at every employment position, every time that SPU has applied its religious belief in conduct policies, make his own determination about who he thinks is a minister without judicial oversight, and look into how the policy is applied without even first knowing whether the person is a minister. Go ahead. I don't know what this letter says. I mean, the reality is they have the information. You're now jumping to a conclusion of what they might do with it. And this is just the request for objective information, correct? Your Honor, no. What the Attorney General said to the District Court was they needed to determine who was a minister. And this runs directly, and they've asked for information with regard to every employment position at the university, every time this policy has been applied. What the D.C. Circuit said in the Duquesne University case was that if an LRB moved forward, it would end with, and I quote, the board trolling through the beliefs of the university, making determinations about its religious mission, and whether certain faculty members contribute to that mission. This is no business of the state, end quote. That is what the AG is attempting to do here. He wants to troll through SPU's employment policies, its application of its religious employment policies, and determine which employees are ministers, aren't ministers, are contributing, aren't contributing to the faith, and then take further action. I have a few minutes remaining, and I do want to turn to the issue of younger abstention, because the District Court did err by applying younger abstention here. First, for younger abstention to apply, this would need to be a quasi-criminal proceeding within the meaning of younger. It is not, because the AG himself does not have the power to sanction SPU under the WLAD. He would have to go into court as a litigant to do that. This court, in Applied Underwriters v. Lara, made clear that the power to sanction is crucial here, just as the Supreme Court acknowledged in Sprint. Even if this were the right kind of proceeding, it would still be necessary to meet all three of the Middlesex factors, that is, that the proceeding is ongoing, the proceeding implicates important state interests, and it provides adequate opportunity to raise constitutional challenges. We agree that point two, implicating important state interests, is met here, but the other two are not, and I want to focus on whether the proceeding is ongoing. This court has never applied younger abstention to an investigation alone that has not continued on with further proceedings. Five other circuit courts of appeal have looked at that question, several of them multiple times, and the First, Third, Fourth, Fifth, and Seventh Circuits have all determined that an investigation alone that has not yet proceeded to other, more formal proceedings is not the right time to apply younger abstention. As a matter of fact, the Fourth Circuit, I believe, said it best in Telco, where it said the period between the threat of enforcement and the onset of formal enforcement proceedings may be an appropriate time for a litigant to bring its First Amendment challenges. If this time is never appropriate, any opportunity for federal adjudication of federal rights will be lost. If the AG is right here, then state attorneys general can have a get-out-of-federal-court-free card merely by opening an investigation. That runs headlong into this court's determinations on pre-enforcement standing, for the fact that you have some sort of threat or some sort of warning communicated is an important factor to show that a party can go into federal court. In each of the cases in these other circuits that I have mentioned, what happened is you had some sort of state or local commission or some sort of state or local official who was investigating potential wrongdoing, but had not yet concluded the investigation, drawn conclusions and taken further enforcement steps. And in each case, the other circuit said, no, this is too soon. Younger does not apply merely to the investigation. And so the only way to sustain the district court's ruling on this point would be to create a five-to-one circuit split. Now the AG has pointed to two cases, he says, to the contrary, but they are not. The first is the Wood case. It's an unpublished decision from the 11th Circuit. That decision is governed by Middlesex because it involves an attorney disciplinary proceeding under the jurisdiction of the state Supreme Court. There was even a docket number there in the Georgia Supreme Court that the 11th Circuit pointed to in that case. And so under Middlesex, the Supreme Court referred to, I believe it was the unique relationship between the state Supreme Court and the disciplinary proceedings. And that was appropriate for Younger. That's very different from what's happening here. Second, the AG has pointed to the Amatullah case out of the 10th Circuit. There the court looked at the state law and determined when under state law the proceeding began. The proceeding was already before a board, which would have to make a determination either not to move forward to issue a reprimand letter or to recommend the case move forward to stripping the position's license, which was what happened. And so those cases are not to the contrary. They were different than the investigation here. This court in Citizens for Free Speech already had an investigation that was completed, a notice to appear before the Zoning Board for formal abatement proceedings. It was far more advanced. And San Jose Silicon Valley Chamber of Commerce, this court said that the state of the proceedings was like a criminal case where the defendant had been convicted, but the court had not yet imposed a sentence. I know your time is running short, and I'm sure our presiding judge will give you some additional time, as we did the other case. But I had one area we hadn't touched on, and that's prudential ripeness. Yes, Your Honor. And we all know what the Dry House case said. What do we do with prudential ripeness at this stage of the proceedings? So Your Honor, and if I may have an extra minute to respond to this question, I would I'll add three minutes to your clock, so you can answer Judge McEwen fully, but then if you want to make rebuttal, save some of your three minutes for rebuttal. Thank you, Your Honor. I will do that. And so I believe the best guide to that is the court's decision in Skyline Wesleyan, where the court noted that there was an obvious conflict between what the state law required and what the church's religious beliefs required, said that it was fit for decision now, didn't even have to reach the hardship prong. You know, I think the two cases here that the AG has relied upon, first, of course, is Your Honor's decision in Thomas. In Thomas, there was no hardship because there was no threat of enforcement. This court said that no prospective tenant had ever complained, let alone filed a complaint. Neither the state commission or the human rights commission had ever initiated an investigation. Skipping down, the court said it would be appropriate to postpone judicial review to a time when the landlords actually face an enforcement proceeding or at least an imminent threat of one. Here we have an imminent threat of an enforcement proceeding. And that's true with regard to our pre-enforcement claims. Certainly, I'd say it's also true with regard to the AG's investigation into our religious policies and religious decision-making. And so this case stands on very different footing from Thomas. With regard to Twitter, you know, as Your Honor has acknowledged, that's not relevant to our pre-enforcement claims. With regard to ripeness, what we have alleged, especially in our count 11, is not specific to the investigation itself, but to the AG's conduct in calling for more complaints against SPU because it went to federal court and filed a federal civil rights lawsuit. Counsel, do you want to save a minute of your time? Yes, Your Honor. For a moment. Yes. For these reasons, the district court's decision should be reversed. I'll reserve the balance of my time. Thank you. And now we'll hear from the appellee. Good morning, Your Honors. Daniel Junfer, the Attorney General. Seattle Pacific University asked this court to prohibit the state's chief legal official from performing even the most basic inquiry into its employment practices and whether they comply with Washington's civil rights laws. But the university's complaint utterly bear of any allegations of actions it wants to take but did not because of the investigation or any actions that it took in the past that did not confer standing. This morning, I'd like to underscore two points. The first is that the university's conclusory allegations do not satisfy this circuit's injury and fact requirements. And second, even if they did confer, even if they did satisfy injury, they cannot be redressed by this court. First, none of the university's claims sufficiently allege injury. That is true of its claims regarding the investigation and the alleged retaliation. If an unenforced civil investigative demand by the Texas Attorney General does not cause injury because the Texas Attorney General did not enforce it, then this letter, as this court held in Twitter, then this letter, which provides, which has no consequences for the university's response, cannot be injury either. Aside from the letter, has the Washington Attorney General or the department at any time disavowed its intent to enforce this law against Seattle Pacific? Your Honor, no, Your Honor, but that's because we don't have any of the factual basis to understand whether the law even applies in the first place. Woods was an as-applied challenge that said that particular people may move forward with their claims in particular instances. And so without that information, there is nothing for this office to disavow. And so... It's kind of an odd situation where there's kind of an all-out request, come on down and tell us your complaints about Seattle Pacific U or if you have a problem. That seems like a little more than institutional information gathering. And Your Honor, we only requested that, but there is no consequence for the university to do anything or for anyone to respond to that request. And so there is no injury because, there is no injury because of the university based on whatever the university does. That's what this court held in Twitter. And to be clear... Well, isn't there, under the Susan B. Anthony case, what we're looking at is this threat of future enforcement, correct? Some of the claims that SBU brings are pre-enforcement claims, yes. Yes. So you kind of have to divide between the pre-enforcement claims and then the claims related solely to the letter or other categories. But in the pre-enforcement context, the state has never disavowed that it believes that there's a problem here and that the state should be able to figure out at a minimum this ministerial distinction, correct? That's correct, Your Honor. But our office doesn't know, our letter makes clear that we have made no determination as to whether the law has been violated. We do not have any information that would suggest whether the law has been violated at all, given the as applied nature of Woods. And even SPU at every turn denies that it has taken adverse employment action because of this policy. Its amended complaint alleges that none of the complaints that our office were received were based on any adverse employment actions. That's ER 85 at paragraph 43. And even when the university was sued by an applicant who alleged that he was denied employment because of his sexual orientation, SPU's pleadings make clear that it did not take that action because of it, because of the applicant's sexuality. Is that the case that was settled? Yes. Yes, Your Honor. But its pleadings say that it's, that it did not take that adverse employment action because of the individual's sexuality. That's the Reindell case. Yes, Your Honor. And that statement is at SCR 194, beginning at line 18. And so there are no allegations here of who, what, when, or what actions have been taken against non-ministerial employees because of their sexual orientation. And so instead, SPU expects this court to imagine a situation or an actual case or controversy to adjudicate its claim. And this court on Bonk, as detailed by Judge McEwen, declined to do that in Thomas. Well, Thomas was a little bit different situation. It was quite a bit different than the situation we have here. And then we also have to figure out where does the Susan B. Anthony case come in, which was after the Alaska case. Do you have a position on that with respect to the application of which of those cases in the Ninth Circuit? Yes, Your Honor. I guess I first will point out that Thomas also involved a situation where the plaintiff could not point to an instance in the past where they have violated the statute or an instance in the future where they intended to violate the statute. They could not point to that specific instance. And all of the cases from this circuit involving pre-enforcement challenges that have been relied on the parties have that same requirement. All of the cases that we have discussed have included plaintiffs who have either changed their conduct because of this prospective statute, and they declined to take particular actions, such as in Italian colors, that involved restaurants who wanted to say that we want to have a surcharge for credit cards. And they refrained from doing that because of the California law that prohibited that. Or it alternatively involved instances where the plaintiff had clearly violated the statute in the past, and that conduct was now prescribed by statute, and they wanted to do that in the future. That's Judge Gould's opinion in Tingley. How, if you look at what they want with respect to declaratory judgment, how would they be able to get into court if they can't get here on a pre-enforcement challenge? Your Honor, as the courts in this— With respect to the declaratory judgment. Of course. And all of the pre-enforcement challenges that this circuit has found standing for have involved instances where the plaintiff has refrained from taking particular conduct, and that conduct would have been prescribed by statute. But here we have the university saying, we have this policy. It has not said that it has refrained from applying this policy, or refrained from terminating someone because of this policy. I thought they said that they stick by their religious beliefs with respect to the sexual orientation. But, Your Honor, they don't point to a single instance where they have taken any adverse action because of this employment policy, and I think that's what makes this case different from all of the other cases that have found pre-enforcement standing in this circuit. And so this court is left to assume how this policy would apply to what positions in what situations and what the university would do, and that just is not standing under this court's precedence. As this court noted in Tingley, this is SPU complaining about the mere existence of a threat of prosecution. And that remains true even from this Judge Gould's opinion in Tingley, as well as your opinion Judge McKeown in Thomas. And so regardless of what the university alleges, it has not been able to point to a single instance where this policy has been applied. I just quickly want to turn back to the investigation and the retaliation claims, and just underscore the fact that in Twitter, to be clear, the alleged complaints in Twitter were much more severe than what the conclusory claims that the university has brought forward here. In Twitter, the plaintiff there brought a First Amendment challenge saying that the government's investigation, it challenged the investigation as a whole, was chilling their conduct with respect to being able to moderate their content or curate their content in the way that they wanted to, free from government interference. But this court held that that was not enough, that was merely too conclusory, and because the investigation, because there was no enforcement of the civil investigative demand, that that did not satisfy the injury requirement for Twitter's retaliation claims challenging the investigation. And to avoid this conclusion, SBU continuously points to the fact that it must continue to produce hundreds of documents or documents related to its president or its administrators, but the record just makes plain that that is not true. You know, had SBU simply waited for our office to respond to its invitation to have a discussion, we might not be here, but instead it chose to file suit three business days after it raised its objections. And so it continuously, it continues to allege that it must produce all of these documents that no one in our office has pressed them for, and so that's why its investigation and And I think, Judge McKeown, you've been pointing to many of the redressability problems with the university's complaint. SBU's failure to plead any of these facts also poses a redressability problem because it asks the federal courts to enjoin the state's chief legal official from any prosecution or even the most basic inquiry into its employment practices and whether they comply with state information is there for a federal court to write or justify an injunction of that nature. It says that it is an as-applied challenge, but there are no facts about whether or how it applies this policy to its employees. And so that's why there's no basis to provide declaratory relief there. We do not know how it applies this policy, what positions it has, what those jobs entail, or any of the other information that this court would need or the district court would need to provide an injunction pursuant to the federal civil procedure that is specific and detailed such that anyone knows what the injunction enjoins. Whether or not an individual is or is not a minister is a fact-bound inquiry. That's the U.S. Supreme Court precedent under Our Lady of Guadalupe. And so any declaratory relief that the federal courts provide would inevitably be nothing than an advisor opinion in the wake of an actual case or controversy with an individual who has brought suit. Turning to the injunctive relief, SBO requests injunctive relief to be free from any interference with its relationships with its ministerial employees or enforcement of the Washington law against discrimination with respect to its employees. But that relief can't be granted without causing the very investigatory harms it alleges because we don't know who is a minister and who is not. That's true of all of the relief it seeks with respect to its non-ministers as well. It fails to plead any of the necessary facts to determine who of its hundreds of employees falls within to which category. And so the university fails to provide any guidance for how its requested injunction would write. There is this sort of ongoing dialogue between the Attorney General and the university about what do you want and how are you, you know, what's your interpretation under state and federal law? Are you really just looking at ministerial employees? And then you say, well, that's rhetorical. So, you know, I think that what they want may not be what they would get, but at this stage it seems the question is do they have minimal standing to get into court? And the concern I'm having is that the merits keep getting collapsed into the standing issue. How do we prevent that? Your Honor, I think that inevitably whatever, the university is asking essentially for a blank check to apply the law however it sees fit with respect to all of its employees. That's the only way that it would get the redress that it is asking for here. Well, it might, may or may not be able to do that, but why wouldn't that be a question after discovery for the court to determine whether it had the factual or legal foundation to issue such an injunction or declaratory judgment? Your Honor, I don't think we can get to discovery unless the university has standing in the first place. I understand that. But I was saying if they had standing, you're sort of saying, well, the only way they can get there is if they, you know, win the entire portion of what they want. And I'm saying, well, that's not really for us to decide now whether they would be successful on the merits. So, as you frame it, it would seem to me that that would be appropriate for a court to decide whether under the Constitution or the Washington law, does it apply to everybody or just to ministers? And what's the scope of the university's entanglement there? Why isn't that a legal question similar to what we decide all the time? Your Honor, with respect to dividing any sort of minister, and I understand there's an overall employee question, but with respect to the ministers and the non-ministers, that just can't be decided by this court. The university says, and with respect to all of its employees, the university also says that these claims may move forward. In particular instance, it's not asking for a blank check, but I struggle to see how any court would provide such a relief. Let me follow up, I think that the argument of the appellant is that the district court basically conflated redressability with the merits. And I think following up on Judge McKeown's question is that in terms of trying to address that, there's some factual inquiry. It may be that the district court then has the benefit of discovery in terms of the issue of ministerial and non-ministerial employees and what have you. So it's not a blank slate, but that's the role the district court plays in any injunctive relief, correct? And the relief that's fashioned may or may not be what's desired by the plaintiff in a particular case, but it's based on some type of record developed. Your Honor, I guess what the, to suggest that the university can get an injunction that prohibits- No, no, no, no. I think that's not what Judge McKeown was suggesting. I'm saying my point is that in terms of redressability being different than the merits, just in terms of redressability initially in terms of any kind of discovery that isn't taken, we're at a motion to dismiss stage here, that in terms of development of the record, that the university may or may not be able to develop a record. So it isn't automatic that, you know, the district court can't engage in a factual inquiry, but clearly on the district court level, there can be an analysis as to what the underlying facts are. And there may or may not be then an injunction which could or could not be fashioned, but there's based on some record. But Your Honor, to provide that sort of injunctive relief would be sweeping. We haven't seen any type of injunction of that nature. And I guess just further reasons, basically that injunction would require the university to be allowed to apply its policies regardless, to any position it would like, regardless of what they do. And we don't have any of that information. And it wants essentially the federal court's permission to apply its employment policies free, however it wants, with no consideration of state law on all Washingtonians. Well, they may be wrong as a matter of law. We don't know at this point, but right now we're just trying to figure out, can they go to the next stage? I mean, we're looking at standing. And I hear your point because their request for injunction declaratory relief is pretty broad, but we're not really there yet, are we? Yeah, I don't, I think we are, Your Honor, because we don't have, I guess, as I'm just stepping back, that is only with respect to one of their claims, right? It is only their pre-enforcement challenge to apply to all of their employees in whatever fashion they would like. But I think that relief is so sweeping that we aren't aware of any case that has provided that type of relief. And so I think that's why it becomes a redressability problem, because none of the... But when you can... That's what we see in litigation. You ask for the sky, you ask for the moon, and you get a little tree in the end, you know? Isn't that kind of... Or you get a small forest, but you don't get the moon, the sky... As long as you don't promise your client ahead of time, that's why this is... But that's kind of... We just don't know the answer here. That's the point, isn't it? That the university ought to be able to go in and... They can ask for this, they just might not get it. And that's why I'm concerned that we are collapsing ultimate redressability with the merits, which we don't... We can't determine the merits. I think we both agree on that, right? I think because there are no facts, yes. And I understand that this is at the motion-dismiss stage. But I think the difficulty with that is that whether... The university is bringing this as-applied challenge to apply this law in whatever manner it likes without any factual information of what those positions are or how it applies this policy. And in any event, Washington law against discrimination claims only move forward in particular contexts. Woods was an as-applied decision that held that in certain circumstances, plaintiffs may be able to move forward. And that itself is a factual inquiry. And so all of those together, I think, prevent this court from looking into this question and providing the redress that the university asks for. And I do not think I need the benefit of Judge Gould's kindness. So in summary, your honors, the university provides no injuries that can be addressed by this court. This is a case in search of a controversy. SBU does not have standing, and we would ask this court to affirm. Thank you. Thank you. Ms. Windham, the key point that I think the state of Washington has made here is you haven't really alleged any change of behavior or any impact on the university. And so you don't have any substantial threat of a problem at this point. What's your response to that? Your honor, SBU has alleged, and this is ER 83, complaint paragraph 31, the university requires present tense all of its regular faculty and its staff, other than student employees and temporary employees, to affirm its statement of faith and mission statement and also to abide by certain lifestyle expectations in keeping with the university's religious beliefs. Complaint 165. We've said the attorney general's actions have a chilling effect on the university's expressive association, requiring it to make decisions about employment under a cloud of government investigation and impending penalties. We're in a similar situation here as Skyline Wesleyan Church, where this court said that although we might have a fuller record in front of us, if there had been a request for a Skyline tailored exemption and a response, article three does not require Skyline to have taken further steps before seeking redress in court for this injury. We've identified a policy, just like they had in California trucking v. Bonta, city and county of San Francisco v. Trump, an intent to continue with that policy and a credible threat of enforcement by the state's highest law enforcement official. What the AG is attempting to do here is to collapse the merits into the standing analysis. This court said in Arizona v. Yellen that standing in no way depends upon the merits. We're asking the court to allow the district court to reach the merits of this claim. Have you offered in your complaint or elsewhere any specific instance where the university has taken action, employment action, against an employee on the basis of this policy? Your Honor, we have not pointed to a specific instance. Although we were sued under this policy, there was a factual dispute about why it was that that employee did not, that applicant did not receive the policy. But we have shown that there is a policy in place. The policy has been in place before. It's in place now. The university intends to continue it. That's been sufficient under prior cases in this court. We have shown that there is a credible threat of enforcement. The AG is investigating and has communicated a warning letter. And we have alleged that this chills our religious exercise, that we have to continue to act and make internal religious decisions and hiring decisions under a cloud and a threat of future enforcement. That's more than enough. Is there a public record as to that settlement in the Superior Court case? Yes, Your Honor, there is a public record and I believe that some of that was entered into the, there's a record that the, of the dismissal. I don't believe it's part of the settlement itself. No, I saw the dismissal, but is there any record of what's behind the dismissal? I don't believe that the settlement itself is part of the public record. Your Honor, we have stated more than enough to show that we meet the standard for pre-enforcement standing in this court's cases. There has never been a case where this court has had this much threat of enforcement, this clear a policy, this clear a conflict with state law, and yet declined to exercise its jurisdiction. The decision below should be reversed and the case remanded with instructions to reinstate SPU's claims. Thank you. Thank you, counsel. The State of Pacific University v. Ferguson shall now be submitted and the panel thanks. Thanks counsel on both sides of the argument for your excellent advocacy. Thank you. I think that's our last case for the day and therefore the court will now adjourn for the week. All rise. This court for this session stands adjourned.
judges: McKEOWN, GOULD, Bennett